THE UNION BANK CO., APPELLEE, *v.* BRUMBAUGH, APPELLANT.

[Cite as Union Bank Co. v. Brumbaugh (1982), 69 Ohio St. 2d 202.]

(No. 81-173—Decided February 10, 1982.)

204

*Messrs. Robenalt, Daley, Balyeat & Leahy, Mr. John F. Robenalt* and *Mr. William B. Balyeat,* for appellee.

*Donald V. Wood, Jr., Co., L.P.A.,* and *Mr. Donald V. Wood, Jr.,* for appellant.

PATTON, J.   This case presents two issues for our determination. The first is whether the trial court erred when it corrected "nunc pro tunc" its journal entry granting the bank 9.5 percent interest so that interest at 11.5 percent would begin to run from February 3, 1979. The second issue is whether appellant was entitled to an oral hearing prior to the trial court's confirmation of the sale.

I.

The note executed by appellant provided for interest at 9.5 percent per annum unless the bank, with 30 days prior written

notice, decided to raise the interest. There is no indication in the record that the bank gave appellant 30 days notice. In addition, the bank prayed for 9.5 percent interest in its complaint. Indeed, it was not until almost five months after the trial court signed the order providing for foreclosure that the bank moved to increase the interest. The Court of Appeals found the trial court's order increasing the interest to be correct, rationalizing that by entering into a consent entry, appellant had bound herself to an agreement where the bank could, at its option, increase the interest rate. The appellate court's decision was in error for two reasons. First, the bank did not comply with a stipulation in the note providing that 30 days notice be given. Second, appellant consented to an entry that provided for 9.5 percent interest, not an entry in which the bank could unilaterally amend the interest rate.

Accordingly, the bank is only entitled to 9.5 percent interest per annum from February 3, 1978. The judgment of the Court of Appeals is reversed as to this issue.

## II.

The second issue is whether appellant was entitled to a hearing prior to the confirmation of the sale so that she could present evidence the sale price was inadequate.

The trial court found appellant was not entitled to a hearing, citing Local Rule 5(C)(1) of the Court of Common Pleas of Wood County. That rule provides that a motion for confirmation of sale "shall normally be considered *ex parte* in nature." Appellant maintains that despite the provisions of Local Rule 5(C)(1), she was entitled to a hearing pursuant to *Citizens Loan & Savings Co.,* v. *Stone* (1965), 1 Ohio App. 2d 551.[7] *Citizens Loan & Savings Co.* held that the debtor in that case was entitled to a hearing prior to the confirmation of sale to demonstrate he had redeemed the property. We find *Citizens Loan & Savings Co.* is not dispositive of the case at bar because it was decided prior to the enactment of the Ohio Rules of Civil Procedure, which specifically provided the trial courts the authority to enact local rules.

---

[7] *Citizens Loan & Savings Co.* relied upon *Reed* v. *Radigan* (1884), 42 Ohio St. 292, which stated that at the confirmation of sale all parties, including the purchaser, may be heard. See also, *Ohio Life Ins. & Trust Co.* v. *Goodin* (1860), 10 Ohio St. 566.

The Civil Rules became effective July 1, 1970. They were intended to supersede all laws in conflict with them. Section 5(B), Article IV, Ohio Constitution.[8] Civ. R. 7(B)(2) provides that a " * * * court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition." The Court of Common Pleas of Wood County has by rule specifically made provision for the hearing *ex parte* of the motion for confirmation of sale. Pursuant to the Ohio Constitution, Local Rule 5(C)(1) superseded *Citizens Loan & Savings Co., supra.*

Local Rule 5(C)(1) does not mandate that in every case no hearing shall be held. It vests within the trial court discretion in determining whether to conduct a hearing. In this regard, it comports fully with Civ. R. 7(B)(2), which states the court *may* make provision for the submission of motions without oral hearing. The issue then is whether the trial court abused its discretion in denying appellant a hearing. We find it did not.

In her motion opposing the confirmation of foreclosure, appellant maintained that her property was to be sold for an inadequate amount. Attached to her motion, she submitted the appraisal of one broker, who stated the property was worth $319,200. Appellant requested an oral hearing, which request was denied. We find the trial court did not abuse its discretion in denying her request. R. C. 2329.17 provides that the property is to be appraised by three disinterested freeholders who are residents of the county where the lands are situated. The appraisers are to be impartial. There is no evidence appellant's appraiser was a resident of Wood County or that he was disinterested. To the contrary, on this latter point, he was her agent and could hardly be considered impartial.

In addition to her contention that a hearing in her case was mandated by *Citizens Loan & Savings Co.,* appellant argues that her due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution have been violated. We disagree.

Procedural due process requires that when the govern-

---

[8] Section 5(B), Article IV of the Ohio Constitution provides in part:
" * * * All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

ment takes a property interest, there must be notice and a hearing afforded the aggrieved party. *Goldberg* v. *Kelly* (1970), 397 U. S. 254. In *Goldberg,* the court held that recipients of welfare benefits were entitled to notice and a hearing prior to the termination of welfare benefits because an eligible recipient may be deprived of the very means by which to live. Any countervailing governmental interest in conserving fiscal and administrative burdens was clearly outweighed by the recipient's interests.[9]

Six years after its decision in *Goldberg,* the United States Supreme Court, in *Mathews* v. *Eldridge* (1976), 424 U. S. 319, considered whether the initial termination of disability benefits without an evidentiary hearing violated due process. The court found it did not and distinguished *Goldberg* by finding, at page 340, that disability benefits, unlike welfare benefits, were not based upon financial need. In addition, the court, at page 335, set forth three factors to be considered in determining whether an aggrieved party's due process rights have been violated. First, the court must examine the private interest that will be affected by the official action. Second, the court must look at the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. Finally, the court must reflect upon the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. In applying these dictates to the case at bar, we find the procedures in this case fully comport with due process.

## II A.

First, we consider the private interest that will be affected

[9] Prior to its decision in *Goldberg,* the United States Supreme Court held in *Sniadach* v. *Family Finance Corp.* (1969), 395 U. S. 337, that Wisconsin's prejudgment garnishment procedures which temporarily froze a garnishee's wages pending trial violated the principles of due process insofar as the garnishee was not afforded an opportunity to be heard or to tender any defenses. Likewise, in a post *Goldberg* decision the court found that the prejudgment statutes that denied the possessor a prior opportunity to be heard worked a deprivation of property without procedural due process. *Fuentes* v. *Shevin* (1972), 407 U. S. 67. See also, *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.* (1975), 419 U. S. 601.

by the court's action. Appellant's interest in her property is indeed significant. However, as explained below, her interests were adequately protected by statute.

## II B.

The second factor to be considered is the risk of an erroneous deprivation and the probable value of additional safeguards. The potential risk to appellant can indeed be significant. However, the probable value of any additional safeguards is virtually nonexistent. The statutory scheme for foreclosure proceedings is designed to protect the interest of the mortgagor. R. C. Chapter 2329 governs the procedures for executing against property. R. C. 2329.17 provides that when execution is levied upon lands, the officer who makes the levy must call an inquest of three disinterested freeholders who are residents of the county where the lands taken are situated. The appraisers must swear to impartially appraise the property and then return an estimate of the real value of the property. Thereafter, the officer must give public notice of the time and place of sale for at least 30 days before the sale by advertisement in a newspaper published in and of general circulation in the county. R. C. 2329.26. The land cannot be sold for less than two thirds of the appraised value. R. C. 2329.20. There is no statutory dictate that a hearing be held at this time. If the court, after examining the proceedings taken by the officers, finds the sale was made in conformance with R. C. 2329.01 to 2329.61, inclusive, it shall confirm the sale. R. C. 2329.31. Where the trial court abuses its discretion in confirming the sale, a reviewing court will reverse that decision. See *Laub* v. *Warren Guar. Title & Mtg. Co.* (1936), 54 Ohio App. 457, 468; *Lake Shore Saw Mill & Lumber Co.* v. *Cleveland Realization Co.* (1919), 11 Ohio App. 387, 388.

In light of the procedural safeguards of R. C. Chapter 2329 which were adhered to in this case, we find appellant's interests were adequately protected.

## II C.

The final factor to be considered is the governmental interest involved, including the fiscal and administrative burdens. To hold that a hearing must be held prior to every confirmation of sale would result in a duplication of state ef-

fort where the court, in effect, would also have to appraise the property, a duty specifically delegated by statute to three disinterested freeholders. The statutes concerning foreclosures were specifically designed to avoid this outcome and to assure that a fair appraisal was made.

The rationale used by the United States Supreme Court in *Mathews, supra,* has been reiterated in *Monmouth Medical Center* v. *Harris* (C.A. 3, 1981), 646 F. 2d 74; *Keeler* v. *Joy* (C.A. 2, 1981), 641 F. 2d 1044; *Himmler* v. *Califano* (C.A. 6, 1979), 611 F. 2d 137; *Town Court Nursing Center, Inc.* v. *Beal* (C.A. 3, 1978), 586 F. 2d 266. We find *Mathews* to be controlling in the instant case and hold that due process does not require one must be afforded a hearing prior to the confirmation of sale in a foreclosure proceeding. The decision to conduct a hearing lies within the sound discretion of the trial court.

Accordingly, the judgment of the Court of Appeals is affirmed as to the second issue herein.

The judgment of the Court of Appeals is reversed in part and affirmed in part.

*Judgment affirmed in part*
*and reversed in part.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER, HOLMES and KRUPANSKY, JJ., concur.

PATTON, J., of the Eighth Appellate District, sitting for C. BROWN, J.