[Cite as *Fidelity Tax, L.L.C. v. Hall*, 2017-Ohio-5604.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Fidelity Tax, LLC, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 16AP-720 |
| | | (C.P.C. No. 10CVE 10 15275) |
| Jeffrey B. Hall, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 29, 2017

**On Brief:** *Lane Alton & Horst LLC, Dennis J. Morrison, Jeffrey J. Madison* and *Christopher B. Burch*, for appellee. **Argued:** *Jeffrey J. Madison.*

**On Brief:** *Kemp, Schaeffer & Rowe Co., L.P.A.*, and *Erica Ann Probst* for appellant. **Argued:** *Michael N. Schaeffer.*

APPEAL from the Franklin County Court of Common Pleas

TYACK, P.J.

{¶ 1} Defendant-appellant, Jeffrey B. Hall, appeals from several orders of the Franklin County Court of Common Pleas that distribute the sale proceeds of a foreclosed property. For the following reasons, we affirm the orders of the trial court.

{¶ 2} Hall brings two assignments of error for our consideration:

I. The Trial Court Abused Its Discretion by Granting Huntington National Bank's Motion for Order of Distribution.

> II. The Trial Court Abused its Discretion by Failing to Grant a Hearing on Huntington National Bank's Motion for Order of Distribution.

## I. History of the Case and Factual Background

{¶ 3} On October 18, 2010, Fidelity Tax, LLC ("Fidelity"), filed a complaint alleging that it had purchased a tax certificate based on nonpayment of taxes and that the certificate represented a first lien on real property owned by Hall located at 597-601 Oak Street, Columbus, Ohio 43215. Fidelity named potential lienholders as defendants, including First National Bank of Zanesville ("First National"). Fidelity asserted that First National possibly had an interest in the property based on a recorded mortgage in the principal amount of $190,000 which Hall had executed in 1998 and named First National as mortgagee.

{¶ 4} On November 26, 2010, Huntington National Bank ("Huntington"), filed an answer to the complaint and asserted a cross-claim against Hall. Huntington argued that it possessed a valid lien on the property based on the same 1998 mortgage referenced by Fidelity. Huntington asserted that it was successor by merger to Unizan Bank, which was, itself, successor by merger to First National. Huntington alleged that Hall was in default of the terms, conditions, and obligation contained in the note and that appellant owed unpaid principal, interest, costs, fees, and expenses. Huntington also sought an order finding that it was entitled to foreclosure of the mortgage.

{¶ 5} Hall answered Fidelity's complaint and subsequently answered Huntington's cross-claim. On December 16, 2011, Fidelity dismissed its complaint without prejudice. Huntington thereafter filed a motion for summary judgment on its cross-claim for foreclosure.

{¶ 6} On September 26, 2012, the trial court granted summary judgment and entered a decree of foreclosure. The court found that Hall owed Huntington "the sum of $91,977.90 as of February 8, 2012, and that interest continued to accrue on the note, as well as costs, fees and expenses." *Fid. Tax, LLC v. Hall*, 10th Dist. No. 12AP-923, 2013-Ohio-3165, ¶ 10. We affirmed the granting of summary judgment on appeal. *Id.*

{¶ 7} The property sold at public auction on January 1, 2014. The trial court made a confirmation entry of the sale of the property and ordered distribution of the sale

of the proceeds on March 21, 2014. Hall appealed that judgment to this court. We found that the confirmation entry was not a final appealable order and dismissed the appeal for a lack of jurisdiction. *Fid. Tax, LLC v. Hall*, 10th Dist. No. 14AP-241, 2014-Ohio-4448. The trial court revised the confirmation entry by a nunc pro tunc entry. Again Hall appealed the confirmation entry. On February 24, 2015, the confirmation entry was vacated by an order that was agreed to by the parties. The buyer had pled to withdraw from the purchase after the closing was delayed for over one year.

{¶ 8} On October 13, 2015 a receiver was appointed by the trial court. Subsequently, the receiver sold the property and closed the sale. The proceeds of the sale were ordered to be distributed in a series of entries from the trial court. On June 20, 2016, the trial court ordered $3,877.39 to be paid to the United States Internal Revenue Service. On July 5, 2016, the trial court journalized an order to immediately distribute $141,394.69 to Huntington, stating: "Huntington waived costs of $5,768.86 in its Reply, after which waiver, and adding additional interest and additional attorney's fees provided a reduced payoff to $143,944.07. The Court further notes that Huntington also agreed in its Reply to allow a credit of $2,549.38, representing a total of two payments allegedly made by Defendant Hall." (July 5, 2016 order directing receiver to make distribution to Huntington.)

{¶ 9} On August 2, 2016, the trial court ordered $14,900 to be distributed to defendant-creditor, Shawn Allyson Britt. The September 29, 2016 order made further distributions to the receiver's counsel and terminated the receivership. The September 29 order also made a distribution of $11,932.38 to Hall.

{¶ 10} Hall filed a timely notice of appeal contesting four decisions and orders: (1) the June 20, 2016 order to pay the I.R.S.; (2) the July 5, 2016 order directing the receiver to make distribution to Huntington; (3) the August 2, 2016 order for distribution to Shawn Allyson Britt and a holdback amount; and (4) the September 29, 2016 order granting final fees and termination of the receivership and disbursement to Hall. Hall's assignments of error, however, only reference the July 5, 2016 entry.

**II. Distribution Orders Reviewed Under an Abuse of Discretion Standard**

{¶ 11} A trial court's order of distribution cannot be disturbed absent an abuse of discretion. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Id.* An abuse of discretion connotes more than an error of judgment; it implies a decision that is arbitrary or capricious, one that is without a reasonable basis or clearly wrong. *Pembaur v. Leis*, 1 Ohio St.3d 89 (1982); *In re Ghali*, 83 Ohio App.3d 460 (10th Dist.1992). However, an appellate court will review questions of law de novo. *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.*, 76 Ohio St.3d 521, 523 (1996).

## III. Attorney Fees Need Not Be Pled Before Summary Judgment

{¶ 12} Hall's first assignment of error argues the trial court erred in granting Huntington's motion for order of distribution of sale proceeds, filed May 19, 2016. Hall avers that Huntington failed to seek attorney fees in its demand for relief set forth in its answer or counterclaim. Hall also makes the argument that the trial court, in its September 26, 2012 judgment granting Huntington's motion for summary judgment and decree in foreclosure, did not award attorney fees and, thus, Huntington is not entitled to them.

{¶ 13} Ohio courts follow the so-called "American rule," which requires that each party involved in litigation pay his or her own attorney fees. *McConnell v. Hunt Sports Ent.*, 132 Ohio App.3d 657, 699 (10th Dist.1999), citing *Sorin v. Bd. of Edn. of Warrensville Hts. School Dist.*, 46 Ohio St.2d 177, 179 (1976). There are three well-recognized exceptions to this rule: (1) where statutory provisions specifically provide that a prevailing party may recover attorney fees, (2) where there has been a finding of bad faith, and (3) where the contract between the parties provide for fee shifting. *Id.*, citing *Pegan v. Crawmer*, 79 Ohio St.3d 155, 156 (1997).

{¶ 14} R.C. 1319.02 allows for enforcing a commitment to pay attorney fees in commercial contracts of indebtedness as an exception to the American rule:

> If a contract of indebtedness includes a commitment to pay
> attorneys' fees, and if the contract is enforced through judicial
> proceedings or otherwise after maturity of the debt, a person

that has the right to recover attorneys' fees under the commitment, at the option of that person, may recover attorneys' fees in accordance with the commitment, to the extent that the commitment is enforceable under divisions (C) and (D) of this section.

(C)  A commitment to pay attorneys' fees is enforceable under this section only if the total amount owed on the contract of indebtedness at the time the contract was entered into exceeds one hundred thousand dollars.

(D)  A commitment to pay attorneys' fees is enforceable only to the extent that it obligates payment of a reasonable amount.

The statute states that the right to recover attorney fees is the option of the party that has that right.  The statutory construction would be that the option to collect attorney fees must be asserted.  *First Natl. Bank of Bellevue v. NE Port Invests., LLC*, 6th Dist. No. OT-14-027, 2015-Ohio-558, ¶ 26.

{¶ 15} The September 26, 2012 judgment entry granting Huntington's motion for summary judgement found that Hall was in default of the terms and conditions of the note and mortgage as a result of his failure to pay real estate taxes.  That judgment was affirmed on appeal.  *Fid. Tax, LLC*, 2013-Ohio-3165.

{¶ 16} The mortgage signed by Hall and held by Huntington as the successor by merger contains a clause entitling the bank to recover attorney fees.  The mortgage states:

**RIGHTS AND REMEDIES ON DEFAULT.**  Upon the occurrence of any Event of Default and at any time thereafter, Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Attorneys' Fees; Expenses.**  If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover each sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from

> the date of expenditure until repaid at the rate provided for in the Note. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and, Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate, any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance, to the extent permitted by applicable law. Borrower also will pay any court costs, in addition to all other sums provided by law.

(September 1998 Mortgage at 4.) This clause for attorney fees adheres to the requirements of R.C. 1319.02 in that the original borrowed amount exceeded $100,000 and the clause limits the recovery to what is adjudged reasonable. Once Hall was found to be in default, Huntington at that time or anytime thereafter could exercise its contractual rights to recover attorney fees.

{¶ 17} On May 19, 2016, after the receiver sold the property, Huntington moved for an order of distribution. Huntington moved that the amount owed on the judgment was $147,369.93 which included attorney fees. This amount was calculated based on the principal balance amount, plus interest, costs, and attorney fees as provided in the judgment and mortgage and as described in the attached affidavits. The attached affidavits stated the attorney fees amounted to $36,777.92. These amounts were soon thereafter modified in Huntington's June 3, 2016 memorandum and attached affidavit to a payoff amount of $143,944.07 which included $38,955.92 in attorney fees.

{¶ 18} On July 5, 2016, the trial court ordered a distribution of $141,394.69 to Huntington accepting that Huntington was willing to acknowledge $2,549.38 in payments allegedly made post-judgment by Hall.

{¶ 19} Hall argues that Huntington failed to demand attorney fees in its complaint or counterclaim. Huntington's answer, counterclaim and cross-claim concerning attorney fees pled:

> WHEREFORE, Defendant The Huntington National Bank herein demands:

* * *

> (c) For all other relief, both legal and equitable, to which Huntington is entitled.
>
> * * *
>
> WHEREFORE, Defendant and Cross-Claimant The Huntington National Bank, successor by merger to Unizan Bank, successor to the The First National Bank of Zanesville herein demands:
>
> * * *
>
> (f) For all other relief, both legal and equitable, to which Huntington is entitled.

(Nov. 26, 2010 Answer, Counterclaim, and Cross-Claim of Huntington at 3.) Further, Huntington did not demand any attorney fees in its April 3, 2012 motion for summary judgment.

{¶ 20} Other courts have held that, in default judgments, Civ.R. 54(C) prohibits judgment that is different or exceeds the amount prayed for and that default judgments must be pled with more specificity then found in a catchall provision, e.g. "entitled to all remedies at law and equity." *First Natl. Bank of Bellevue.* The case at bar is not a default judgment but a summary judgment. Hall was well aware that Huntington was seeking a decree of foreclosure and moving the trial court to find him in default. In the event of a default, the mortgage makes clear that the lender could seek attorney fees at some later date.

{¶ 21} We find that Huntington's failure to specifically plead for attorney fees before summary judgment was rendered does not prohibit them from exercising their contractual rights pursuant to R.C. 1319.02 at a later date. Further, the absence of awarding attorney fees in the September 26, 2012 judgment granting Huntington's motion for summary judgment and decree in foreclosure does not prohibit the seeking of attorney fees at a later date as such fees were neither pled nor moved for before that point nor were they required to be.

{¶ 22} The first assignment of error is overruled.

**IV. The Trial Court Properly Denied a Hearing Prior to Distribution**

{¶ 23} The second assignment of error asserts that the trial court abused its discretion in not granting an evidentiary hearing in response to Huntington's May 19, 2016 motion for Order of Distribution. Hall argues that Huntington's own internal records contained multiple discrepancies and contradictions that would preclude the trial court from rendering the correct payoff amount to allow a proper distribution order.

{¶ 24} Civ.R. 7(B)(2) provides: "To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition." Whether to hold a hearing to determine distribution in a foreclosure case is within the discretion of the trial court. *See Union Bank Co. v. Brumbaugh*, 69 Ohio St.2d 202, 209 (1982)(due process does not require that one must be afforded a hearing prior to the confirmation of sale in a foreclosure proceeding. The decision to conduct a hearing lies within the sound discretion of the trial court).

{¶ 25} The trial court had substantial evidence before it that allowed for the determination of amounts in a distribution to Huntington. The trial court had before it the affidavits of Leslie Caruso, a Huntington vice president, which detailed the amounts due, and attorney Jeffrey Madison, which detailed the legal work performed in the case and the hourly rate charged. The trial court also had in the record the loan documents, and Jeffrey Madison's June 3, 2016 affidavit which reflected additional work preformed since May 14, 2016 and accounted for a January 2015 $150 payment from Hall.

{¶ 26} Further, Huntington's reply memorandum to Hall's memorandum contra to the motion for order of distribution credited Hall with alleged payments as part of a compromise in an effort to reduce further fees of both parties likely to accrue as both sides litigated over a comparatively small amount of money.

{¶ 27} The trial court had sufficient evidence before it and did not abuse its discretion in not granting an evidentiary hearing prior to issuing its July 7, 2016 order directing the receiver to make distributions to Huntington.

{¶ 28} The second assignment of error is overruled.

## V. Conclusion

{¶ 29} The trial court had sufficient evidence before it to make a determination in issuing its July 7, 2016 order of distribution. It was not an abuse of discretion in foregoing an evidentiary hearing to issue the order of distribution.

{¶ 30} Having overruled both assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and SADLER, JJ. concur.

———————